**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

PHA Lighting Design, Inc.,    :
                             :

        Plaintiff,         :
                             :

     v.               :       CIVIL ACTION NO.
                             :       1:08-cv-01208-JOF

Richard P. Kosheluk, et al.,    :
                             :

        Defendants.    :
                             :

## OPINION & ORDER

This matter is before the court on Defendants' motion to dismiss Plaintiff's complaint [31] and Defendants' motion for partial summary judgment [64].

I.    **Motion for Partial Summary Judgment**

    A.    **Factual and Procedural History**

Plaintiff PHA Lighting Design, Inc. (PHA) and Defendants Richard Kosheluk (Kosheluk) and Archiluce International, Inc. (Archiluce) are in the lighting design business. D.E. [71], at ¶ 1. "Lighting design is a 'specialized aspect of architecture,' that involves the creation of a lighting plan for commercial buildings." *Id*. at ¶ 2. Kosheluk was employed as a lighting designer at PHA from 2000 to 2007, but he left in 2007 to form Archiluce. *Id*. at ¶ 7-8. After leaving PHA, Archiluce created an electronic Power Point presentation (the

"Brochure"), which was distributed to current and potential customers of Archiluce. *Id*. at

¶ 30. The beginning of the Brochure contains the following text, which is at the heart of this

dispute:

> Richard Kosheluk's unique integration of lighting design and in-depth understanding of lighting technologies coupled with the detailing, design, and project management skills of his architectural practice has made for the successful implementation of many complex design projects while Partner at PHA. **The selected project images herein were all designed and/or completed under his direction while at PHA Lighting Design**.

D.E. [48-2], at 3 (emphasis added). The Brochure, which is just over 100 pages, then

displays pictures of the lighting in many different buildings such as the Georgia

International Conference Center, the Legacy Tower in Chicago, Illinois, and the Atlanta

Marriott Marquis. D.E. [48]. Those projects were done by PHA, with some involvement by

Kosheluk, although the extent of his involvement is disputed. The Archiluce logo appears

at the bottom of every page of the Brochure that contains a picture. D.E. [48].

At the end of the Brochure a list of options containing the following words appears:

commercial, residential, hospitality, sport facilities, transportation, institutional/museums,

**expanded project listings**, run entire show, and contact. D.E. [48- 9], at 6. After clicking

on "expanded project listings," a list of projects pop up. *Id*. at 7-12. The expanded project

listing contains both the projects that were featured in pictures in the Brochure and projects

that were not featured elsewhere in the Brochure. Dep. of Archiluce, at 129. An example of

a project listing is as follows:

2

Chicago Tribune Interactive, Chicago, IL
Architect: Perkins + Will - Chicago
Lighting Designers: Richard Kosheluk and Paul Helms, PHA Lighting Design[1]

D.E. [48-9], at 7. The Brochure, contained on a compact disc, was distributed in several forms. Sometimes it was sent by mail with an accompanying cover letter.[2] D.E. [71], at ¶ 31. Other times, Kosheluk gave the Brochure to the recipient in person without the cover letter. Dep. of Archiluce, at 72. The Brochure was never sent to anyone electronically. D.E. [71], at ¶ 33. Upon leaving PHA, Defendant Kosheluk also admittedly copied from PHA's server some of the photographs he used in the Brochure, as well as PHA's master contact list, and some of PHA's lighting cut sheets, expense reports, shop drawing stamp template, lighting fixture specifications, and proposals. Dep. of Kosheluk, April 24, 2009, at 110:3-13, 85-87, 83:20-84:8.

As a result of Defendants' distribution of the Brochure, as well as Kosheluk's copying of some of Plaintiff's proprietary information, Plaintiff brought suit on March 26,

---

[1]The parties dispute the correctness of the names following "Lighting Designers" on some of the projects in the expanded project listings. PHA contends that Defendants did not include all of those PHA people who actually worked on the project. D.E. [71], at ¶¶ 28-29.

[2] Although it is unclear whether all of the cover letters sent out contained exactly the same text, Plaintiff does state that the cover letters said, "The enclosed CD is a sampling of the lighting design work that I have completed during my years at PHA, to show a diversity and range of design skills from varying architectural design styles, complexity, size, [sic] project type." D.E. [71], at ¶ 32.

AO 72A
(Rev.8/82)

2008 claiming violations of the Lanham Act, the Georgia Uniform Deceptive Trade Practices Act, common law unjust enrichment, and statutory interference with property. Plaintiff's unjust enrichment and statutory interference with property claims arise out of Defendant Kosheluk's alleged taking of "(1) lighting cut sheets . . . (2) lighting fixture specifications . . . (3) lighting control specifications . . . (4) PHA client lists . . . (5) photographs of PHA lighting projects . . . and (6) PHA proposal, transmittal and correspondence forms."[3] Amended Complaint, at ¶ 18. Defendant Kosheluk counterclaimed for breach of contract, quantum meruit, unjust enrichment fees, and attorneys' fees.

Defendant Kosheluk's counterclaims are based upon a December 21, 1999 offer letter he received from Paul Helms, owner and president of PHA, prior to Kosheluk becoming a PHA employee. The parties agree that the language in the letter was part of a contract between Kosheluk and PHA, they only disagree as to the meaning. The letter from Helms states the following, "Retirement Contribution — PHA will contribute to a retirement account for you at the same rate as myself (I am verifying with the accountant but this is either 21% or 28%). An enrollment form is attached." D.E. 71, at ¶ 13. Kosheluk accepted

---

[3] It is undisputed that Defendant Kosheluk did not copy any correspondence forms. D.E. [71], at ¶ 68. Furthermore, in its response to Defendant's motion for summary judgment, Plaintiff states that it withdraws its claims for unjust enrichment and conversion regarding the lighting cut sheets, lighting fixture specification, lighting control specifications, and the photographs of PHA lighting projects. D.E. [88-1], at 10 n. 1. Therefore, the court will not address those claims. The court will only address Plaintiff's unjust enrichment and conversion claims that Plaintiff is still pursuing—those relating to PHA client lists and PHA proposal and transmittal forms.

the offer letter verbally, filled out the attached enrollment form, and subsequently started working at PHA. *Id.* at ¶ 14-15. In 2001, Kosheluk received a contribution from PHA in the amount of 20% of his gross income for the year 2000. *Id.* at ¶ 16. Kosheluk went to Paul Helms and stated that he was supposed to receive at least 21%. *Id.* at ¶ 18. Helms told Kosheluk that PHA would make up the 1% in a subsequent year. *Id.* However, no other contributions were made during the remainder of Kosheluk's employment. *Id.* at ¶ 17. Helms personally received retirement benefits prior to 2001, but after January 1, 2001 and throughout the remainder of Kosheluk's employment, Helms claims he did not receive any retirement benefits. *Id.* at ¶ 20.

Defendants filed the present motion for partial summary judgment on May 29, 2009. Defendants ask for summary judgment as to all of Plaintiff's claims, and Kosheluk's breach of contract claim. Defendants do not address Kosheluk's claim for quantum meruit, unjust enrichment, or attorneys' fees.

### B.    Contentions

Defendants argue that Plaintiff's Lanham Act claims fail as a matter of law for several reasons. First, the claims are precluded by the United States Supreme Court's decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003). Furthermore, Defendants argue that even if *Dastar* does not preclude Plaintiff's claims, Plaintiff still cannot make out a case for either false designation of origin or false

5

advertising. Because Plaintiff's Lanham Act claims fail, so do Plaintiff's claims under Georgia's Deceptive Trade Practices Act (GDTPA). Defendants also contend that Plaintiff's claims for statutory interference and unjust enrichment are preempted by the Federal Copyright Act and/or Georgia's Trade Secrets Act of 1990 (GTSA). As to its counterclaim, Defendant Kosheluk argues that the language in the offer letter given to him by Plaintiff clearly states that Plaintiff agreed to put a minimum of 21% of Kosheluk's gross pay into a retirement account for Kosheluk.

Plaintiff, on the other hand, argues that when all inferences are drawn in Plaintiff's favor, genuine issues of fact exist as to all of Plaintiff's claims. First, Plaintiff argues that *Dastar* only applies to services not goods and, therefore, does not apply to Plaintiff. Next, Plaintiff contends that the evidence supports both a claim for false advertising and a claim for false designation of origin under the Lanham Act. As such, Plaintiff maintains that it has also presented enough evidence for its GDTPA claim to survive summary judgment. Finally, Plaintiff argues that its unjust enrichment and statutory interference with property claims are not preempted by Georgia's Trade Secrets Act, and therefore, summary judgment is not appropriate on those claims either. Plaintiff does not address Defendants' contention that the Copyright Act also preempts Plaintiff's property claims. As to Defendant Kosheluk's counterclaim, Plaintiff admits that the facts are not in dispute, but it contends that the contract language makes Kosheluk's receipt of retirement benefits contingent on Paul

6

Helms', PHA's president, retirement benefits. Because Paul Helms got 0% benefits from 2001-2007, so did Kosheluk.

## C. Discussion

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears "the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Where the nonmoving party bears the burden of proof at trial, the moving party may discharge this 'initial responsibility' by showing that there is an absence of evidence to support the nonmoving party's case . . ." *Hickson Corp. v. Northern Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). All reasonable doubts should be resolved in the favor of the nonmovant. *Id.*

### 1. Lanham Act Claims

Section 43(a)(1) of the Lanham Act provides:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 43(a)(1). Claims under § 43(a)(1)(A) are generally referred to as "false designation of origin" claims, while claims under § 43(a)(1)(B) are generally referred to as "false advertising" claims. *See, e.g., Wilchcombe v. Teeve Toons, Inc.*, 515 F. Supp. 2d 1297, 1304-05 (N.D. Ga. 2007) (Shoob, J.). Plaintiff pled both a false designation of origin claim and a false advertising claim in its complaint. Amended Complaint, at ¶ 22-31.

### a.    False Designation of Origin

Plaintiff's false designation of origin claim is one for "reverse passing off," which occurs when the defendant "misrepresents [the plaintiff's] goods or services as his own." *Dastar*, 539 U.S. at 27 n. 1. To maintain a claim for reverse passing off, Plaintiff must prove "(1) the item at issue originated with the plaintiff; (2) the defendant falsely designated the origin of the work; (3) the false designation was likely to cause consumer confusion; and (4) the plaintiff was harmed by the defendant's false designation." *Del Monte Fresh Produce*

AO 72A
(Rev.8/82)

*Co. v. Dole Food Co., Inc.*, 136 F. Supp. 2d 1271, 1284 (S.D. Fla. 2001) (citing *Softel, Inc. v. Dragon Med. and Sci. Commun., Inc.,* 118 F.3d 955, 970 (2d Cir. 1997)). Defendants contend that Plaintiff cannot meet these elements, and even if Plaintiff could, *Dastar* precludes Plaintiff's recovery for false designation of origin.

Plaintiff is alleging that the Brochure contains several different falsities.[4] First, Plaintiff alleges that the statement "The selected project images herein were all designed and/or completed **under [Kosheluk's] direction** while at PHA Lighting Design" is false. According to Plaintiff, none of the projects were done "under his direction." The lighting design process is a collaborative effort, and furthermore, Kosheluk did minimal work on a few of the projects that appear in the Brochure. Additionally, because Archiluce's logo is on every page of the Brochure, including those that have pictures of PHA-designed projects, with no reference to PHA, Plaintiff contends that this constitutes a false statement or designation of origin. This designation is false because it implies that Archiluce created or was involved in the creation of the designs pictured when Archiluce was in no way involved. Finally, Plaintiff alleges that a few of the listings in the "Expanded Project Listings" portion of the Brochure are false because they do not include the names of all the PHA lighting designers involved with each project, only some of the names.

---

[4]Defendants dispute that any of these falsities actually constitute a false designation of origin or that they are false statements.

Defendants have alleged, in part, that there is no evidence of likelihood of confusion or that Plaintiff has been harmed. As Plaintiff has the ultimate burden of proof at trial, Plaintiff's present burden then is to "come forward with evidence sufficient to withstand a directed verdict motion." *Hickson*, 357 F.3d at 1260. Plaintiff responds to Defendants' claim that it has presented no evidence of likelihood of confusion by arguing that because the statements in the Brochure are false, it has shown likelihood of consumer confusion. Plaintiff offers no other arguments. Not all false designations or false statements are actionable under § 43(a)(1)(A) because not all false designations are confusing. The court is unsure that all or any of the allegations above actually constitute a false designation of origin, as the Brochure clearly states that all projects in the Brochure were done while Kosheluk was at PHA and lists PHA in all of the project listings at the end of the Brochure. But even presuming the designations in this case are in fact false, likelihood of confusion is an essential element of a false designation of origin claim. Courts in this circuit look to the following factors to determine whether a likelihood of confusion exists in Lanham Act trademark claims: (1) type of mark; (2) similarity of mark; (3) similarity of the products the marks represent; (3) similarity of the parties' retail outlets and customers; (5) similarity of advertising media; (6) defendant's intent; and (7) actual confusion. *Lipscher v. LRP Publ'ns, Inc.*, 266 F.3d 1305, 1313 (11th 2001) (recognizing that while all of the factors may not be relevant to a reverse passing off claim, others must still be considered). Courts can also look

10

to the sophistication of the consumer, and the more sophisticated the consumer, the less likely it is that confusion exists. *See Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1360 (11th Cir. 2007). Likelihood of confusion is a question of fact, and Plaintiff must do more than simply show that Defendants passed Plaintiff's services off as their own. *Lipscher*, 266 F.3d at 1313-14. Here, Plaintiff discusses none of the above-mentioned factors. Plaintiff's sole argument is that likelihood of confusion is shown because Defendants made false statements in their Brochure. Even if Defendants' Brochure does contain a false designation of origin, that alone is not enough to sustain a Lanham Act claim. *See Lipscher*, 266 F.3d at 1314. Plaintiff must offer some evidence to show that the falsity is likely to confuse, but has not.

Furthermore, even if Defendants falsely designated the origin of the services presented in its brochure, and even if such designation is likely to confuse, Plaintiff must also show that it was harmed by Defendants' false designation. *See Del Monte*, 136 F. Supp. 2d at 1284. As evidence of harm, Plaintiff alleges "Archiluce was awarded at least ***ten*** lighting design projects from entities that were provided the Brochure." [88-1], at 16 (emphasis in original). Plaintiff points to invoices sent by Archiluce to several businesses, claiming that those businesses received the Brochure and later hired Archiluce.[5] However,

---

[5] While Plaintiff claims it is undisputed that at least ten businesses that received the Brochure later hired Archiluce, its citation to evidence does not support its claim. Plaintiff cites only Docket Entry [88-5], Exhibit C to the Declaration of Eric F. Barton, which contains invoices sent from Archiluce to clients. None of the invoices mention the Brochure.

AO 72A
(Rev.8/82)

Plaintiff has not attempted to show any causal connection or explain how this harms Plaintiff. Plaintiff has not offered any evidence that those businesses receiving the Brochure hired Archiluce based on the Brochure or Defendants' alleged false designations. Plaintiff also has not made any effort to show that it was in the running for the jobs obtained by Archiluce, that its sales have suffered since Defendants started distributing the Brochure, that Defendants' actions have tarnished Plaintiff's goodwill or reputation, or any other conceivable type of harm. While the court must construe all inferences in favor of Plaintiff, there must be something to base those inferences on. Defendants have pointed to an absence of evidence of injury, and in return, Plaintiff has pointed to no evidence to support its claim that it was harmed by Defendants' alleged false designation of origin. As Plaintiff has not sustained its burden on some of the elements of its false designation of origin claim, the court need not address the other elements, nor must the court address Defendants' argument

---

The court cannot conclude, based upon Plaintiff's citation to the evidence, that all of the businesses invoiced in Exhibit C to the Declaration of Eric F. Barton also received the Brochure prior to hiring Defendants.

Plaintiff also argues that solely because Archiluce and PHA are competitors injury has been shown. Plaintiff relies on *Energy Four, Inc. v. Dornier Med. Sys., Inc.*, 765 F. Supp. 724, 734 (N.D. Ga. 1991) (Forrester, J.). However, that case is factually and procedurally inapposite. In that case, the plaintiff was requesting a preliminary injunction. Neither party requested summary judgment. Further, the defendant in that case made direct, misleading comparative claims and the plaintiff also presented probative evidence of declining sales and a small customer base. *Cf. North Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1227 (11th Cir. 2008) ("Proof of falsity is generally only sufficient to sustain a finding of irreparable injury when the false statement is made in the context of comparative advertising between the plaintiff's and defendant's products.").

AO 72A
(Rev.8/82)

regarding *Dastar*. Defendants' motion for summary judgment is GRANTED on Plaintiff's false designation of origin claim.

### b. False Advertising

Again, Plaintiff is alleging that several aspects of the Brochure are false. First, Plaintiff alleges that the statement "The selected project images herein were all designed and/or completed under [Kosheluk's] direction while at PHA Lighting Design" is false for those reasons stated above. Also, Archiluce's logo is on every page of the Brochure, including those that have pictures of PHA-designed projects, with no reference to PHA, and Plaintiff contends that this constitutes a false statement. Finally, Plaintiff alleges that several of the listings in the "Expanded Project Listings" portion of the Brochure are false because they do not include the names of all the PHA lighting designers involved with each project, only some of the names. The Eleventh Circuit has held that:

> To succeed on a false advertising claim under § 43(a)(1)(B) of the Lanham Act, a plaintiff must establish that (1) the advertisements of the opposing party were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the movant has been-or is likely to be-injured as a result of the false advertising.

*Hickson*, 357 F.3d at 1260. Under the first element, Plaintiff must show that any statement in the Brochure is either literally false, or if literally true, that the Brochure "implicitly convey[s] a false impression, [is] misleading in context, or likely to deceive consumers." *Id*.

13

at 1261. If Plaintiff can show that the statement in the Brochure is literally false, then under element two, deception or capacity for deception is presumed. *See Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002). However, if the Brochure is literally true but misleading, Plaintiff must "'present evidence of deception' in the form of consumer surveys, market research, expert testimony, or other evidence."[6] *Hickson*, 357 F.3d at 1260. Plaintiff contends that the statements in the Brochure are false. Defendants argue that they are at best misleading, and therefore, Plaintiff's claim fails because it presented no evidence of consumer deception. Further, Defendants allege that Plaintiff has not shown that any false statement in the Brochure was material, nor offered any evidence of harm.

The court first addresses whether the statements Plaintiff takes issue with are literally false or literally true but misleading. Plaintiff has chosen only to argue that the Brochure is literally false or contains literally false statements. The court must look to the advertisement as a whole. *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007). *See also Johnson & Johnson*, 299 F.3d 1242, 1248 (11th Cir. 2002) ("[T]he court must view the face of the statement in its entirety, rather than examining the eyes, nose, and mouth separately and in isolation from each other."); *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939,

---

[6] Plaintiff admittedly has offered no evidence of deception, and therefore, if the Defendants' Brochure is only misleading or ambiguous, then Plaintiff's claim fails for this reason alone.

AO 72A
(Rev.8/82)

946 (3d Cir. 1993) ("[I]n assessing whether an advertisement is literally false, a court must analyze the message conveyed in full context."). "In analyzing whether an advertisement ... is literally false, a court must determine, first, the unambiguous claims made by the advertisement ..., and second, whether those claims are false." *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 274 (4th Cir. 2002) (internal quotations and citations omitted). Plaintiff's claims regarding Archiluce's logo and the lack of completeness of the project listing are not literally false nor do they convey an unambiguously false message. The Brochure clearly states that all projects were done while Kosheluk was at PHA, it lists PHA in every lighting design credit in the Expanded Project Listings section, and it shows that other designers were involved in almost all of the project, even if a few of the listings are not complete. The placement of the logo and the completeness of the Project Listings are at the most ambiguous or misleading. However, Plaintiff has presented some evidence that at least some of the projects in the Brochure were not done under Kosheluk's direction, and therefore, some evidence that the Brochure contains one literally false statement.

Even if deception is presumed because the Brochure may contain a literally false statement, Plaintiff still has to present evidence of materiality. *North Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1226 (11th Cir. 2008). In other words, Plaintiff must produce some evidence to show that the statements it contends are false are likely to have an effect on the purchasing decision. *Id.* This requirement "is based on the premise that not

15

all deceptions affect consumer decisions." *Id.* In reference to materiality, Plaintiff only argues that because the allegedly false statements basically make up the whole Brochure, there is evidence of materiality. However, Plaintiff offers no evidence other than the Brochure to support its argument of materiality. As stated above, not all deceptions affect consumer decisions, and Plaintiff has not explained whether consumers would care that the Brochure did not properly list all of the lighting design members for each project listed in the Expanded Project Listings or that the projects in the Brochure were done under Kosheluk's direction or whether he was merely involved in the collaborative process that helped create them. The presence of a false statement alone does not prove materiality.

Furthermore, for those reasons stated above, the court finds that Plaintiff has not shown that it was harmed or is likely to be harmed by Defendants' allegedly false designation. Again, Plaintiff only offers evidence that a small number of Defendants' clients received the Brochure before hiring Defendants. However, this does not show causation, nor does it show likelihood of harm to Plaintiff. Even with all inferences construed in favor of Plaintiff, Plaintiff's false advertising claim fails. Defendants' motion for partial summary judgment is GRANTED as to Plaintiff's false advertising claim.

### 2.    Georgia Deceptive Trade Practices Act

Plaintiff's complaint asserts that Defendants violated the Georgia Uniform Deceptive Trade Practices Act by:

16

(a) Passing off the lighting designs depicted in the brochure and/or the website as those of Kosheluk and Archiluce;

(b) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of the services provided by Kosheluk and/or Archiluce;

(c) Using deceptive representations as to the source of the lighting designs depicted in the Brochure;

(d) Representing that Kosheluk and/or Archiluce have the sponsorship or approval of PHA;

Amended Complaint, ¶ 33. Defendant argues that "[t]he Eleventh Circuit has found that Georgia's Deceptive Trade Practices Act involves 'the same dispositive question' as the Lanham Act claim . . . ." and therefore, because Plaintiff's claims under the Lanham Act fail, so do Plaintiff's claims under the GDTPA.[7] Plaintiff's only argument in response is that

---

[7] Defendants cite *Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp.*, 139 F.3d 1396, 1413 (11th Cir. 1998) for the proposition that Lanham Act and GDTPA claims involve the same dispositive questions of law. Plaintiff agrees that success on its GDTPA claims is dependent upon success on its Lanham Act claims. However, the case Defendants cite does not hold that claims brought under the GDTPA always involve the same dispositive questions as those brought under the Lanham Act. Instead, after affirming the district court's grant of summary judgment for the defendants on the plaintiff's Lanham Act claims, the Eleventh Circuit affirmed the district court's disposition of the plaintiff's GDTPA claim simply because the parties did not dispute that the plaintiff's GDTPA involved the same dispositive questions as the Lanham Act claim. *Camp Creek Hospitality Inns, Inc.*, 139 at 1396. However, "the standards governing **most** of the claims under [the GDTPA] are similar, if not identical, to those under the Lanham Act." *University of Georgia Athletic Ass'n v. Laite*, 756 F.2d 1535, 1539 n. 11 (11th Cir. 1985) (emphasis added). Here, Plaintiff's claims under the GDTPA as to reverse passing off, likelihood of confusion, and deceptive representations as to the source of the lighting designs depicted in the Brochure do indeed track Plaintiff's claims under the Lanham Act. In its response to Defendants' motion for summary judgment on all of its claims, Plaintiff has not discussed confusion as

17

Plaintiff's claims under the Lanham Act survive, and therefore, so do its claims under the GDTPA.

Plaintiff agrees that in the present case its Lanham Act claims involve the same dispositive questions as its GDTPA claims, and the court has found that Plaintiff's Lanham Act claims fail for those reasons stated above. Defendants' motion for summary judgment is GRANTED as to Plaintiff's GDTPA claims

### 3. Unjust Enrichment and Statutory Interference with Property

Plaintiff's complaint alleges a cause of action for both unjust enrichment and statutory interference with property. As stated above, the court will only address Plaintiff's unjust enrichment and conversion claims that Plaintiff is still pursuing—those relating to PHA client lists and PHA proposal and transmittal forms. The parties agree that proposal forms are letters given to clients that "lay out the scope of anticipated work as well as the price, deliverables, and general responsibilities under a design contract." D.E. [64-16] , at ¶ 65. Transmittal forms are fax cover letters informing the recipient that certain documents are enclosed. *Id*. at ¶ 66.

Defendants argue that Plaintiff's unjust enrichment and conversion claims are preempted either by the Copyright Act or by the Georgia Trade Secrets Act. For preemption

to sponsorship or affiliation, but it is also likely to involve the same dispositive questions as well because it requires a showing of both likelihood of confusion and harm. Furthermore, like *Camp Creek*, the parties here agree that the dispositive issues are the same.

to apply, however, Plaintiff must actually have a claim to be preempted. Here, Plaintiff does not contend that it owns copyright in the information taken, nor does Plaintiff allege that the information taken constitutes trade secrets or a novel idea.[8] The court is unsure what legal interest Plaintiff has in the information taken, and if Plaintiff has no property interest in the information taken, then Plaintiff has no claim that can be preempted. However, the court will still address the preemption arguments.

### a. Copyright Preemption

Section 301 of the Copyright Act provides:

> All legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 . . . are governed exclusively by this title.

17 U.S.C. § 301(a). The Eleventh Circuit has held that this requires a two-part determination: "whether the rights at issue fall within the subject matter of copyright set forth in sections 102 and 103, and whether the rights at issue are equivalent to the exclusive rights of section 106." *Crow v. Wainwright*, 720 F.2d 1225, 1225-26 (11th Cir. 1983) (internal quotations omitted). The second part of the test has been described as requiring

---

[8] Georgia law may provide a claim for conversion of non-copyrightable ideas where the plaintiff proves that (1) its idea was novel, (2) disclosure of the idea was made in confidence, (3) the defendant adopted and made use of the idea, and (4) the idea was sufficiently concrete in its development to be usable. *Wilson v. Barton & Ludwig*, 163 Ga. App. 721, 723 (1982). Plaintiff makes no allegations that Defendant took any novel, non-copyrightable ideas from it, as Plaintiff does not address copyright preemption at all.

"additional elements," beyond those necessary for a simple copyright infringement claim. *Howard v. Sterchi*, 725 F. Supp. 1572, 1579 (N.D. Ga. 1989) (O'Kelley, J.). In other words, the state law is not equivalent to the exclusive rights under § 106 of the Copyright Act if "additional elements must be proven." *Id.* Defendants argue that Plaintiff's claims for unjust enrichment and statutory interference with property are preempted by the Federal Copyright Act. Plaintiff does not respond to Defendants' arguments regarding Copyright preemption.

Relevant to the instant case, § 102(a) of the Copyright Act protects certain works of authorship, including literary works. However, there is no copyright protection for ideas, procedures, processes, systems, methods of operation, concepts, principles, or discovery, regardless of how it is described. 17 U.S.C. § 102(b). Therefore, if the works fall within § 102(b), they do not "fall within the subject matter of copyright." *Dunlap v. G&L Holding Group, Inc.*, 381 F.3d 1285, 1294 (11th Cir. 2004) (noting that copyright protection does not extend protection to ideas as distinguished from their expression). If the work does not fall within § 102(b), the Copyright Act may preempt a state law cause of action even when the subject matter at issue would not actually be copyrightable or contains some uncopyrightable material. *See Lipscher v. LRP Publ'ns, Inc.*, 266 F.3d 1305, 1318 (11th Cir. 2001). *See also Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 455 (6th Cir. 2001); *Nat'l Basketball Ass'n v. Motorola, Inc.,* 105 F.3d 841, 849-850 (2d Cir.1997); *United States ex rel. Berge v. Bd. of Trs. of the Univ. of Ala.,* 104 F.3d 1453, 1463 (4th Cir.1997); *ProCD, Inc. v. Zeidenberg,* 86 F.3d 1447, 1453 (7th Cir.1996). Based upon the undisputed

20

definitions of the client lists, proposal forms and transmittal forms, they are works of authorship that are fixed in a tangible medium. Also based upon the undisputed description of the client lists, proposal forms and transmittal forms, the court concludes that those documents do fall into the subject matter of 17 U.S.C. § 102(a), and not § 102(b). Plaintiff does not argue otherwise. "Therefore, the sole issue for determining preemption is whether the rights alleged are equivalent to the exclusive rights under § 106." *Howard*, 725 F. Supp. at 1579.

Section 106 gives the owner of copyrighted material the exclusive right to "reproduce the copyrighted work in copies . . . ." PHA's property claims are based on the allegation in its complaint that "Kosheluk electronically copied the PHA Proprietary Information without the authorization or knowledge of PHA." Complaint, at ¶ 21. As Defendant Kosheluk is accused of copying Plaintiff's client lists, proposal forms and transmittal forms, his actions fall squarely within those rights covered by § 106 of the Copyright Act. The court must determine whether Plaintiff's claims of statutory inference with property and unjust enrichment require additional elements beyond those necessary to prove copyright infringement.

Plaintiff brings its claim for statutory interference under O.C.G.A. § 51-10-1, which provides that "[t]he owner of personalty is entitled to its possession. Any deprivation of such possession is a tort for which an action lies." The statute "embodies the common law action of trover and conversion." *Levenson v. Word*, 294 Ga. App. 104, 106 (2008). The gravamen

of conversion is "an act of dominion over the personal property of another inconsistent with his rights." *Id*. Here, Plaintiff claims that Defendant Kosheluk's wrongful act of dominion was the copying of the client lists, proposal forms and transmittal forms. Kosheluk did not take already existing physical copies that Plaintiff owned, instead he made copies of files containing intangible information. The protection against copying offered by § 106 of the Copyright Act is equivalent, in this case, to the protection offered by O.C.G.A. § 51-10-1, and Plaintiff does not allege, and the court cannot find an extra element that would render Plaintiff's statutory interference with property claim qualitatively different from a claim under the Copyright Act. Plaintiff's claim for statutory interference is preempted by the Copyright Act, and Defendants' motion for summary judgment as to Plaintiff's claim for statutory interference is GRANTED.

However, unjust enrichment "requires proof of an additional element beyond unauthorized" copying. *Howard*, 725 F. Supp. at 1579. Under Georgia law, a benefit must have been conferred on Defendants, which Defendants equitably ought to compensate Plaintiff for. *Smith v. Huckeba*, 232 Ga. App. 374, 375 (1998). The Copyright Act requires no such showing that the unauthorized copying unjustly enriched the copier. *See Hustlers*, 307 F. Supp. at 1382 ("A mere violation of the exclusive rights of section 106 does not constitute unjust enrichment alone.") Therefore, the Copyright Act does not preempt Plaintiff's unjust enrichment claim. *See Howard*, 725 F. Supp. at 1579. *See also Hustlers*, 307 F. Supp. at 1382.

22

### b.     Preemption by the Georgia Trade Secrets Act

Defendants also argue that Plaintiff's claims for unjust enrichment and statutory interference with property are preempted by Georgia's Trade Secrets Act. The GTSA is meant to prevent the misappropriation of trade secrets. Trade secrets are defined as:

> Information, without regard to form, including, but not limited to, technical or nontechnical data, a formula, a pattern, a compilation, a program, a device, a method, a technique, a drawing, a process, financial data, financial plans, product plans, or a list of actual or potential customers or suppliers which is not commonly known by or available to the public and which information:
>
> (A) Derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

O.C.G.A. § 10-1-761(4). The GTSA "supersede[s] conflicting tort, restitutionary, and other laws of this state providing civil remedies for misappropriation of a trade secret." O.C.G.A. § 10-1-767(a). However, the GTSA does not supersede "[o]ther civil remedies that are not based upon misappropriation of a trade secret." O.C.G.A. § 10-1-767(b)(2). Eleventh Circuit and Georgia precedent clearly holds that where the "allegedly misused information actually does rise to the level of a trade secret," claims of conversion and unjust enrichment are preempted, to the extent they are based on a trade secret. *See Penalty Kick Mgmt., Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1297-98 (11th Cir. 2003). *See also Tronitec, Inc. v. Shealy*, 249 Ga. App. 442, 447 (2001), *overruled on other grounds by Williams Gen. Corp. v. Stone*,

279 Ga. 428 (2005). However, Plaintiff does not argue that the information taken by Kosheluk rises to the level of a trade secret nor has Plaintiff brought a claim for violation of the GTSA. *See* D.E. [88-1], at 21.

There is little case law in Georgia discussing preemption by the GTSA, and the court can find no Georgia state case that discusses preemption specifically with regard to intangible information that does not meet the definition of a trade secret. The GTSA is based on the Uniform Trade Secrets Act (UTSA), *See Porex Corp. v. Haldopoulos*, 284 Ga. App. 510, 514 (2007), and interpretation of the preemption provision of the UTSA varies widely.[9] The UTSA has been "uniformly interpreted to preempt previously existing misappropriation of trade secret actions, whether statutory or common law . . . but [courts] have adopted differing approaches and language in interpreting and applying the UTSA's preemption provision to causes denominated as something other than a claim explicitly for 'misappropriation of trade secrets.'" *Hauck Mfg. Co. v. Astec Indus., Inc.*, 375 F. Supp. 2d 649, 654-55 (E.D. Tenn. 2004). For instance, many courts have interpreted the UTSA's preemption provision to eliminate all alternative causes of action for theft or other misuse of confidential or intangible information. *See Hauck*, 375 F. Supp. 2d at 655 (listing cases). Under these cases, the UTSA creates a "single class of commercially valuable intangible

---

[9] Relevant to this case, the only difference between the GTSA preemption section and the UTSA preemption section is that the GTSA reads that it "shall **supersede** conflicting . . . laws of this state," while the UTSA reads that it "shall **displace** conflicting . . . law of this State . . . ."

property which such law protects." *Id*. Therefore, the information is either a trade secret, and all other claims are preempted, or it is not a trade secret, and therefore plaintiff has no legal interest in the information. *Id*. at 657 ("A claim cannot be preempted or not preempted based entirely upon whether or not the information at issue qualifies as a trade secret. If the information is a trade secret, the plaintiff's claim is preempted; if not, the plaintiff has no legal interest upon which to base his or her claim. Either way, the claim is not cognizable."). *See also Glynn v. EDO Corp.*, 641F. Supp. 2d 476, 482-83 (D. Md. 2009); *BioCore, Inc. v. Khosrowshahi*, 96 F. Supp. 2d 1221 (D. Kan. 2000), *rev'd on other grounds*, 80 Fed. Appx. 619 (10th Cir. 2003); *Powell Prods., Inc. v. Marks*, 948 F. Supp. 1469, 1475-76 (D. Colo. 1996); *Mortgage Specialists, Inc. v. Davey*, 153 A.2d 652, 664 (N.H. 2006). Some courts, however, have allowed plaintiffs to assert conversion, unjust enrichment, and other similar claims as alternatives for information that does not rise to the level of a trade secret. *See Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 270 F. Supp. 2d 943, 948-49 (W.D. Mich. 2003); *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 898 (Del. 2002).

In *Diamond Power International, Inc. v. Davidson*, a Northern District of Georgia case interpreting the GTSA, the court held that even where some of the misappropriated information does qualify as a trade secret and some does not, the GTSA still preempts conflicting state law claims. 540 F. Supp. 2d 1322 (N.D. Ga. 2007) (Story, J.). The court differentiated between the theft of physical property and the misappropriation of proprietary information. *Id*. at 1345. If what was taken was intangible, proprietary information, then

state law claims based on that taking were preempted, even where some of the information was not protected by the GTSA. *Id*. The court said:

> If a plaintiff could alternatively recover for misappropriation of non-proprietary information or misappropriation of unguarded proprietary information, the legislative judgment contained in the GTSA-that such information should otherwise flow freely in the public domain-would be subverted. And it would make little sense to go through the rigamarole of proving information was truly a trade secret if plaintiff could alternatively plead claims with less burdensome requirements of proof.

*Id*. The plaintiff in *Diamond Power* brought claims for both misappropriation of trade secrets and unjust enrichment, and the court held that the GTSA superseded the plaintiff's claim for unjust enrichment because the factual basis for the unjust enrichment and misappropriation of trade secrets claim was the same. *Id*. at 1346.

The court finds the reasoning of the *Diamond Power* court persuasive. Here, Plaintiff claims that Defendant Kosheluk electronically copied some of their proprietary information: PHA client lists and PHA proposal and transmittal forms. Although the electronic copies that Defendant Kosheluk made are tangible, the tangible property "has little value apart from the information contained therein." *Opteum Fin. Servs., LLC v. Homestar Mortgage Servs., LLC*, 406 F. Supp. 2d 1378, 1381 (N.D. Ga. 2005) (Shoob, J.). While Plaintiff admits that its information is not protected by the GTSA because the information does not rise to the level of a trade secret, the proprietary information allegedly misappropriated by Defendant Kosheluk does come within the types of intangible information that may be protected as trade secrets. *See* O.C.G.A. § 10-1-761(4). The copies made by Defendant Kosheluk derive

26

their value entirely from the information contained within them. "[A] plaintiff surely cannot use general tort causes of action to revive claims which would otherwise not be cognizable in light of the UTSA." *Hauck*, 375 F. Supp. 2d at 655. Allowing Plaintiff to bring a claim for unjust enrichment and conversion based on Defendant Kosheluk's conduct would subvert the purpose of the GTSA because Plaintiff would not have to prove that the information taken by Defendant Kosheluk was a trade secret, yet could still recover for misappropriation of intangible, proprietary information. Therefore, the GTSA preempts Plaintiff's unjust enrichment claim and conversion claim, and Defendants' motion for partial summary judgment as to those claims is GRANTED.

### 4.    Breach of Contract Counterclaim

Paul Helms sent Richard Kosheluk a letter on December 21, 1999 offering to employ Kosheluk as a designer at PHA based on the terms in the letter. D.E. [64-8]. Helms' letter stated, in relevant part, that "PHA will contribute to a retirement account for you at the same rate as myself. (I am verifying with the accountant but this is either 21% or 28%). An enrollment form is attached." *Id*. It seems that neither party has provided the court with a copy of the enrollment form. However, it is undisputed that Kosheluk verbally accepted this offer, gave the completed enrollment form to PHA, and began working for PHA in 2000. D.E. [71], at ¶¶ 14-15. In 2001, Kosheluk received a contribution to a retirement account in the amount of 20% of his gross income for the year 2000. *Id*. at ¶ 16. Kosheluk informed Helms that he should have been paid at least 21%, and Helms promised to "make up the 1%

27

in a subsequent year." *Id*. at ¶ 18. However, Kosheluk never received any other retirement contributions. *Id*. at ¶ 17. Helms admits that he also received retirement contributions from PHA prior to January 1, 2001, but he alleges that he did not receive any retirement contributions after that date. *Id*. at 20. Defendants dispute the latter statement.

Defendant Kosheluk argues that the parties intended that he be paid yearly benefits, and the only question was whether the rate was to be 21% or 28%. Plaintiff argues that Defendant was only to receive benefits if Paul Helms was also receiving benefits, and therefore, when Paul Helms stopped receiving benefits, Defendant Kosheluk would too. Plaintiff also argues that even if it is liable for breach of contract, Kosheluk cannot recover for anything occurring prior to May 29, 2002, which is six years prior to the date Defendant Kosheluk filed his counterclaim. Plaintiff contends that any claim before that is barred as a matter of law by the six-year Georgia statute of limitations found in O.C.G.A. § 9-3-24. Defendant Kosheluk responds to that contention by arguing that Plaintiff has not sustained its burden in proving an affirmative defense based upon the statute of limitations.

Under Georgia law, "[c]ontract construction involves a three-step process. The court must first determine whether the contract is ambiguous; if it is, the applicable rules of construction must be applied. Only if an ambiguity remains after applying the rules of construction does a jury resolve the ambiguity." *Dooley v. Dun & Bradstreet Software Servs., Inc.*, 225 Ga. App. 63, 64 (1997). If the language of the contract is ambiguous, the intent of the parties or their understanding of the contract at the time the contract was made

AO 72A
(Rev.8/82)

controls the construction of the ambiguous term, and extrinsic evidence can be relied upon to determine the parties' intent. *Id*. at 65. "When parties disagree as to their intent upon entering an agreement, the meaning placed upon the contract language by one party and known to be thus understood by the other party at the time shall be held as the true meaning." *Id*. Furthermore, any ambiguity should be construed against the party that prepared it. *Considine Co. of Georgia, Inc. v. Turner Communications Corp.*, 155 Ga. App. 911, 915 (1980). Defendant Kosheluk contends that he is entitled to retirement benefits of at least 21% because the language in the offer letter sets 21% as the minimum. Plaintiff contends, however, that the phrase "same rate as myself" means that if Helms received 0% contribution, Kosheluk could only receive 0% contribution.

It is clear to the court that the contract language required Plaintiff to pay retirement contributions to a retirement account for Defendant Kosheluk.[10] The language presents no

---

[10] Even if the provision could be seen as ambiguous, both parties intended that Kosheluk would receive yearly retirement benefits. In his deposition, Helms says that when he sent the offer letter to Kosheluk, Helms intended that PHA would provide him (Helms) with retirement benefits in the future. D.E. [64-4], Dep. of PHA, 79:24. Helms also says he told Kosheluk, in conversations they had prior to Kosheluk accepting the offer letter, that PHA intended to make retirement contributions to both Helms and to Kosheluk at the same rate as Helms. *Id*. at 81:5-12. He further testifies that he never told Kosheluk that retirement contributions were contingent upon the ability of the company to pay those contributions, and he never made it clear to Kosheluk that the retirement benefits offered in the letter were not certain. *Id*. at 80:17-23. However, Helms does state that Kosheluk knew Helms was not receiving any retirement contributions at the time when the letter was sent. *Id*. at 80:24-81:2. This is contradicted, however, by the terms of the letter, which was written by Helms. It was Kosheluk's understanding and intention when entering into the contract that he was to receive yearly retirement contributions at a rate of at least 21%. D.E. [64-7], Dep. of

29

contingency other than the rate at which the contribution would be made. It clearly states that PHA would pay Kosheluk retirement benefits at the rate of whatever Paul Helms was receiving at the time. This rate was apparently 21%, as it is undisputed that PHA paid Kosheluk 20% of his gross income for the year 2000, and Helms promised to "make up" the missing one percent. Therefore, by not providing Kosheluk with any retirement contributions from 2001-2007, PHA breached its contract with Kosheluk. However, this is a written contract, and as Plaintiff notes, O.C.G.A. § 9-3-24 provides that "All actions upon simple contracts in writing shall be brought within six years after the same become due and payable." Plaintiff is not liable for any amount that became due and payable outside the statute of limitations. Kosheluk's motion for partial summary judgment as to his counterclaim for breach of contract is GRANTED.

However, the court notes that Defendants do not discuss damages owed to Kosheluk for PHA's breach of contract other than to say that "the Offer Letter required PHA to

Kosheluk, 27:8-12.

Even if Helms did not intend for Kosheluk to receive yearly benefits, Helms knew or should have known that Kosheluk expected to receive yearly benefits at a rate of either 21% or 28%. The offer letter makes clear that Helms, at the time the letter was sent, was receiving benefits at either 21% or 28%. Helms himself stated that he told Kosheluk that PHA intended that both parties receive yearly benefits, and Helms never told Kosheluk that the benefits were not certain. As the parties clearly expected that Kosheluk would receive some benefits each year, they could not have intended that the rate of contribution would ever be 0%. Furthermore, any ambiguities should be construed most strongly against the drafter, Helms and PHA. *See* O.C.G.A. § 13-2-2(5).

30

contribute to a retirement account at a rate of no less than 21% of Kosheluk's income." D.E. [64-1], at 25. The court realizes that Kosheluk's counterclaim does state the amount of salary he received per year, and while the court finds that Plaintiff did breach its contract with Kosheluk, the court declines to rule on the amount of damages owed at this point. Defendant Kosheluk is DIRECTED to file a summary judgment motion on damages within thirty (30) days of the date of this order.

Additionally, while the court is aware that Defendant Kosheluk did not move for summary judgment on his quantum meruit or unjust enrichment claims, those claims seemingly seek nothing more than the retirement money Kosheluk was due under the written offer letter. Neither quantum meruit nor unjust enrichment are authorized where the claims are based on an express contract. *American Teleconferencing Servs., Ltd. v. Network Billing Sys., LLC*, 293 Ga. App. 772, 778 (2008). The parties agree that an express contract was created based on PHA's offer, through the offer letter, and Kosheluk's verbal acceptance of that offer. Furthermore, Defendant Kosheluk cannot recover twice for the same wrong. *See Woodhull Corp. v. Saibaba Corp.*, 234 Ga. App. 707, 712-13 (1998). Therefore, the court will not consider Kosheluk's claims for unjust enrichment and quantum meruit because damages from those claims would be duplicitous.

The only claim remaining then is Kosheluk's counterclaim for attorneys' fees pursuant to O.C.G.A. § 13-6-11. Defendant Kosheluk is DIRECTED to file a summary judgment motion regarding attorneys' fees within thirty (30) days of the date of this order,

31

and that motion should comply with the decisions in *Norman v. Housing Auth.*, 836 F.2d

1292 (11th Cir. 1988) and *ACLU v. Barnes*, 168 F.3d 423 (11th Cir. 1999).

AO 72A
(Rev.8/82)

## II.	Motion to Dismiss

On January 1, 2009, Plaintiff filed a "Certificate of Consent to Withdrawal of Counsel for Plaintiff PHA Lighting Design, Inc.," in which Plaintiff agreed to permit the withdrawal of its counsel Erika C. Birg and Eric F. Barton, both of Seyfarth Shaw LLP, as counsel of record in the present case. D.E. [30]. Nothing was filed in the case until March 6, 2009, when Defendants filed the present motion to dismiss. D.E. [31]. On April 14, 2009, this court ordered Plaintiff to obtain counsel within thirty (30) days and inform the court of such counsel pursuant to Local Rule 83.1, which requires corporations to be represented by an attorney. A Notice of Appearance was filed on March 10, 2009 by Erika C. Birg and Eric F. Barton on behalf of Plaintiff. This was prior to the court's order requiring that Plaintiff notify the court that it had obtained new counsel.

Defendants request that Plaintiff's complaint be dismissed because Plaintiff did not notify the court that it had obtained new counsel within twenty days of its previous counsel withdrawing. *See* Local Rule N.D. Ga. 83.1E(4) (Once counsel withdraws, "the party whom the attorney was representing must within twenty (20) days or before any further proceedings are had in the action before the court notify the clerk of the appointment of another attorney . . . ."). Because there was no activity in the case during the time between Plaintiff's counsel withdrawing and Defendants filing this motion to dismiss, and because this court gave Plaintiff thirty days from April 14, 2009 to obtain counsel, which Plaintiff

33

had already done, Defendants' March 6, 2009 motion to dismiss Plaintiff's complaint is DENIED [31].

## III.  CONCLUSION

Defendants' motion for partial summary judgment is GRANTED [64]. Defendant Kosheluk is DIRECTED to file a motion for summary judgment addressing damages for his breach of contract counterclaim within thirty (30) days of the date of this order. Defendant Kosheluk is also DIRECTED to file a motion for summary judgment regarding his counterclaim for attorneys' fees within thirty (30) days of the date of this order. Defendants' motion to dismiss is DENIED [31].

**IT IS SO ORDERED** this 30th day of March 2010.


_____/s   J. Owen Forrester_____
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)